**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity as Liquidator of Bank of Dallas, Plaintiff,**

v.

**ROYAL PARK NO. 14, LTD., Royal Park No. 20, Ltd., Royal Park Development Corporation, Inc., G.R. Hay and William G. Jones, Jr., Defendants.**

No. 3:92–CV–0513–T.

United States District Court, N.D. Texas, Dallas Division.

Sept. 28, 1992.

---

Michael R. Swan and Roy G. Morris, Dallas, Texas, for plaintiff.

Robert L. Kelsoe and Jeffrey L. Clark, Dallas, Tex., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

This matter is before the court on Plaintiff's July 7, 1992, Motion for Summary Judgment. Defendants responded to the motion on August 17, 1992. Plaintiff replied on September 14, 1992. The court, having considered the motion, response, reply, and competent summary judgment evidence, is of the opinion that Plaintiff's motion should be granted.

## BACKGROUND

This dispute involves Defendants' alleged default on a promissory note and related guaranty and deed of trust executed in favor of the Bank of Dallas. On February 5, 1988, the Board of Directors of the Bank of Dallas found the bank in failing condition and tendered the bank's charter to the Texas Banking Commissioner. The Federal Deposit Insurance Corporation was appointed by the Commissioner as receiver, pursuant to section 3, article 489(b) of the Texas Banking Code. FDIC, as receiver, conveyed to FDIC, in its corporate capacity, a number of assets of the Bank of Dallas. One of the assets was a promissory note dated November 1, 1985, and executed by Defendants Royal Park No. 14, Ltd., Royal Park No. 20, Ltd., Royal Park Development Corporation, G.R. Hay, and William G. Jones, Jr., in favor of the Bank of Dallas. The principal amount of the note was $3,048,409, bearing interest at the Bank of Dallas' base rate plus 1.5%. The original note was subsequently extended and renewed on November 17, 1987.

On November 1, 1985, Defendants G.R. Hay and William G. Jones executed and delivered a guaranty agreement under which they guaranteed payment of the original note and any extensions and renewals.

The Bank of Dallas note is secured by a deed of trust, security agreement, and assignment of rents from Defendants to Frank H. Gill, as trustee for the benefit of the Bank of Dallas. The deed of trust states that in the event of default on the note, the Bank of Dallas could request the trustee to sell the property described at public auction for cash.

On January 17, 1989, pursuant to the terms of the deed of trust, a substitute trustee filed and served written notice of a foreclosure sale of the property described. On February 7, 1989, the property was sold to FDIC for cash in the amount of $706,-000.

On March 18, 1992, FDIC brought an action seeking recovery on the promissory note and related guaranty agreement and deed of trust. FDIC contends that the outstanding balance on the note consists of unpaid principal of $2,049,296.97, plus accrued, but unpaid interest in the amount of $865,483.39, as of July 28, 1992, plus interest accruing at the rate of $533.39 per day. FDIC now seeks summary judgment on all amounts due under the note and guaranty agreement. FDIC also seeks to recover its attorneys' fees.

Defendants have raised three arguments which they contend preclude summary judgment: (1) that FDIC is barred from collecting on the note under the theory of promissory estoppel; (2) that Defendants were not given sufficient notice of the foreclosure sale; and (3) that FDIC's interest charge is usurious.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of sum-

mary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

■ Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

### DISCUSSION

Defendants have raised a number of objections to the sufficiency of Plaintiff's summary judgment evidence. Specifically, Defendants object to the original and amended affidavit of Raymond Veazie as follows: (1) Veazie's statements in paragraphs 5.b, 5.c, 5.1, and 5.q are legal conclusions and facts which are not within his knowledge; (2) paragraph 5.n is a mere recitation in verbatim of portions of the deed of trust, and the document speaks for itself; and (3) figures in Veazie's original affidavit conflict with those in exhibit H. The court has considered these objections, and is of the opinion that FDIC's evidence satisfies the admissibility standards established by the Federal Rules of Civil Procedure for summary judgment. The court will now consider Defendants' contentions regarding the impropriety of summary judgment.

### A. *Promissory Estoppel:*

Defendants first argue that Plaintiff is estopped to collect on the note based upon alleged representations made by an FDIC vice president. Defendants argue that FDIC's vice president, Robert Meador, made oral promises and representations to Defendants concerning renegotiation and discounting of the renewal note and accompanying guaranty obligations. Defendants further argue that they detrimentally and reasonably relied on these representations and that their reliance was foreseeable by FDIC.

■ The doctrine of promissory estoppel may be asserted against FDIC in its corporate capacity as liquidating agent and receiver. *See FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984); *Santoni v. FDIC*, 677 F.2d 174 (1st Cir.1982). To prevail under this doctrine, a party must prove:

1. that the party to be estopped made a definite misrepresentation to the party asserting estoppel;
2. that the party to be estopped was aware of the facts;
3. that the party asserting estoppel did not have knowledge of the facts; and
4. that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury.

*Mangaroo v. Nelson*, 864 F.2d 1202, 1204 (5th Cir.1989).

■ When a government agent's actions exceed the scope of authority or are contrary to statute or regulation, however, the doctrine of promissory estoppel may not be asserted. *Harrison*, 735 F.2d at 413; *Hicks v. Harris*, 606 F.2d 65, 68 (5th Cir. 1979).

■ The court concludes that Defendants' assertion of the doctrine of promissory estoppel is inappropriate in this case. Texas courts have held that the Credit Committee is the only body which has authority to renegotiate or settle a loan. *FDIC v. Spain*, 796 F.Supp. 241 (W.D.Tex. 1992). A liquidation assistant's authority in regard to loan renegotiation consists only of receiving financial statements, tax returns, and settlement offers from debtors seeking to renegotiate. *Id.* The court concludes that Meador, as a liquidation assistant for FDIC, acted beyond the scope of his authority in making oral representations regarding Defendants' loan renegotiation. Therefore, Defendants may not rely on the doctrine of promissory estoppel to prevent FDIC from collecting on the promissory note.

■ Even assuming promissory estoppel could be asserted in this case, Defendants have not shown that their reliance on the

vice president's representations was reasonable. It has long been established that erroneous oral representations from a government agent, without more, are insufficient to prove the element of reasonable reliance. *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 65–66, 104 S.Ct. 2218, 2226–27, 81 L.Ed.2d 42 (1984); *Duthu v. Sullivan,* 886 F.2d 97, 99 (5th Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990). Because Defendants base their reliance exclusively on erroneous oral representations from a government agent, the court concludes as a matter of law that Defendants have not met their burden on the element of reasonable reliance.

## B. *Improper Notice of Foreclosure Sale:*

Defendants next argue that they were not given 21 days notice of the foreclosure sale as required by section 51.002 of the Texas Property Code. Defendants argue that both the date of posting, filing, and service of the notice as well as the date of sale are excluded in calculating the 21 day period for notice. Excluding both of these dates, Defendants assert that they were given only 20 days of notice before the sale. The court is unpersuaded by Defendants' argument.

Texas courts have long followed the rule that only the date of sale is excluded in calculating the 21 day period for notice of a foreclosure sale. *Newman v. Woodhaven Nat'l Bank,* 762 S.W.2d 374 (Tex.App.—Ft. Worth, 1988, no writ); *Valley v. Patterson,* 614 S.W.2d 867 (Tex.Civ.App.—Corpus Christi, 1981, no writ). It is undisputed that FDIC posted, filed and served the foreclosure sale notice on January 17, 1989, and that the foreclosure sale occurred on February 7, 1989. If the date of sale is excluded from the calculation, the last date that proper notice could be given to Defendants under section 51.002 is January 17, 1989. Because January 17, 1989 is the undisputed date of notice in this case, the court concludes that Defendants were properly notified of the foreclosure sale.

## C. *Usury and Double Usury:*

Defendants also assert that FDIC is not entitled to recover on the note because it charged usurious interest. Defendants argue that FDIC charged a usurious interest rate when an error appeared in the original affidavit of Raymond Veazie, filed by FDIC on May 29, 1992. In his original affidavit, Veazie claimed that $2,867,842.04 was the total amount of principal and interest owed by Defendants as of May 1, 1992. The affidavit also stated that $3,362,690.04 was the total amount owed as of May 29, 1992. Defendants assert that based on this error, the interest rate charged in the original affidavit is 216% and exceeds the amount of interest authorized by the note. Defendants further assert that the amended affidavit of Veazie, which corrects this error, is insufficient to avoid usury penalties.

Defendants further argue that the renewal note states that the interest rate to be charged is the base rate charged by the Bank of Dallas plus 1.5%. Defendants assert that after the Bank of Dallas failed, the bank no longer had a base rate of interest for calculating interest, and that the amount of interest charged by FDIC after the bank's failure was therefore usurious.

The court concludes that Defendants' arguments regarding a usurious interest charge must fail. The United States and its agents are immune from usury penalties under the doctrine of sovereign immunity. *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988). The only exception to this principle is when sovereign immunity has been waived. *Id.* Because Defendants have produced no evidence which would establish that FDIC, as an agent of the government, has waived its sovereign immunity, the doctrine of sovereign immunity bars any assertion of usury against FDIC. Therefore, the court concludes that Defendants' final argument to preclude summary judgment must fail, and that summary judgment should be entered in favor of Plaintiff.

The court concludes that as the prevailing party in this action, Plaintiff is entitled to its attorneys' fees incurred in pursuit of

this litigation. Plaintiff's attorneys have failed, however, to submit contemporaneous time records by which this court can make a determination regarding the reasonableness of the attorneys' fees requested. *See* Standing Order No. 1 § 10.1.1; and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Plaintiffs shall have until October 19, 1992 in which to file a motion requesting attorney fees and to submit such records to this court.

### CONCLUSION

This court concludes that Plaintiff has established that there are no genuine issues of material fact that preclude summary judgment and that it is entitled to summary judgment as a matter of law.

It is therefore ORDERED that Plaintiff's July 7, 1992, Motion for Summary Judgment is granted, and final judgment will be entered in Plaintiff's favor.

It is FURTHER ORDERED that Plaintiff shall have until October 20, 1992 in which to file a motion for attorney fees and submit contemporaneous time records in support of this motion.